| | | |
|---|---|---|
| GARY MONTGOMERY, | ) | |
| | ) | Case No. 3:26-cv-80 |
| *Plaintiff,* | ) | |
| | ) | Judge Atchley |
| v. | ) | |
| | ) | Magistrate Judge Poplin |
| FRANK STRADA, DR. JOHN RICHESON, | ) | |
| and CENTURION HEALTH CARE OF | ) | |
| TENNESSEE, LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM AND ORDER

Plaintiff Gary Montgomery was a prisoner in the custody of the Tennessee Department of Correction ("TDOC") incarcerated at the Morgan County Correctional Complex ("MCCX") when he filed this pro se complaint under 42 U.S.C. § 1983 [Doc. 1], Motion for Class Certification and the Appointment of Counsel [Doc. 2], Motion for Injunctive Relief [Doc. 3], and Motion for Leave to Proceed *in forma pauperis* [Doc. 7]. For reasons that follow, the Court will **GRANT** Plaintiff's Motion for Leave to Proceed *in forma pauperis* [Doc. 7] [Doc. 7]. Screening Plaintiff's complaint in accordance with the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(e) and § 1915A, demonstrates that this action must be **DISMISSED** for failure to state a claim. Plaintiff's remaining Motions [Docs. 2 & 3] will therefore be **DENIED AS MOOT**.

## I.  PLAINTIFF'S MOTIONS

### A.  Motion to Proceed *In Forma Pauperis*

Under the PLRA, a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). A review of Plaintiff's motion [Doc. 7] and accompanying documents [Doc. 8] demonstrates that he lacks sufficient financial resources to

pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [Doc. 7] will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee, 37902 twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk will be **DIRECTED** to send a copy of this Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with the PLRA's requirements for payment of the filing fee.

### B. Motion to Certify Class and Appoint Counsel

Plaintiff moves the Court for an order certifying this proceeding as a class action, maintaining that he intends to represent a class consisting of all TDOC inmates who "seek dental healthcare services to save teeth." [Doc. 2]. He also seeks appointment of counsel to represent the class. [*Id.*].

As the Court will explain, all of Plaintiff's claims will be dismissed for failure to state a claim. His Motion to Certify Class and Appoint Counsel [Doc. 2] will therefore be **DENIED AS MOOT**. In addition, Plaintiff cannot meet the requirements for class certification under Federal Rule of Civil Procedure 23(a), which requires that "the representative party" be able "to protect fairly and adequately the interests of the class." *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001). Here, "no representative party [is] available because pro se prisoners are not able to represent fairly the class." *Id.*; *see also Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919

2

(6th Cir. 2009) (holding pro se litigants are "inadequate class representatives"); *accord Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003).

His request for appointment of counsel is likewise moot because the Complaint [Doc. 1] fails to state a claim. However, the Court also notes that appointment of counsel would not be warranted anyway. Pursuant to 28 U.S.C. § 1915(e)(1) "[t]he court may request an attorney to represent any person unable to afford counsel." However, "[a]ppointment of counsel in a civil case is not a constitutional right[,]" but a "privilege that is justified only by exceptional circumstances." *Lavado v. Keohane*, 992 F. 2d 601, 605–06 (6th Cir. 1993) (internal citations omitted). In determining whether "exceptional circumstances" exists, the Court considers "the complexity of the case and the ability of the plaintiff to represent himself." *Cavin v. Michigan Department of Corrections*, 927 F.3d 455, 461 (6th Cir. 2019) (citing *Lavado*, 992 F.2d 601). Plaintiff, who has filed approximately a dozen civil actions in federal court,[1] has stated his factual allegations clearly and appropriately articulated his claims. His dental care claims are, moreover, not legally or factually complex. Even if the motion were not moot, the Court would find that Plaintiff is capable of adequately litigating his case.

## C. Motion for Injunctive Relief

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff seeks "an injunction

---

[1] *See Montgomery v. Gregg*, 3:25-CV-536 (E.D. Tenn.); *Montgomery v. Aramark of Tennessee, LLC et al.*, 3:25-CV-537 (E.D. Tenn.); *Montgomery v. Phillips*, 3:25-CV-538 (E.D. Tenn.); *Montgomery v. Sievers*, 3:25-CV-539 (E.D. Tenn.); *Montgomery v. Phillips*, 3:26-CV-15 (E.D. Tenn.); *Montgomery v. Howe*, 3:26-CV-76 (E.D. Tenn.); *Montgomery v. Hall*, 3:19-CV-1113 (M.D. Tenn.); *Montgomery v. Wellpath Medical*, 3:19-CV-675 (M.D. Tenn.); *Montgomery v. Whidbee*, 3:19-CV-747 (M.D. Tenn.); *Montgomery v. Gentry*, 3:20-CV-406 (M.D. Tenn.); *Montgomery v. Conrad*, 3:21-CV-820 (M.D. Tenn.); *Montgomery v. Smith*, 3:23-CV-275 (M.D. Tenn.); *Montgomery v. Cobble*, 1:25-CV-309 (E.D. Tenn.).

against Defendants from denying healthcare dental services just to save money or create a larger profit." [Doc. 3]. Because Plaintiff filed the instant motion before any Defendant has been served, the Court treats it as a motion for a temporary restraining order ("TRO"). *See* Fed. R. Civ. P. 65(b).

Plaintiff is no longer at MCCX or in TDOC custody [Doc. 10]. He is now a pretrial detainee at the Davidson County Downtown Detention Center.[2] [*Id.*]. Plaintiff's release from TDOC custody ended the alleged violation of his constitutional rights for which Defendants could be held responsible, which renders his request for injunctive relief moot. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding inmate's claim for declaratory and injunctive relief against prison officials became moot once prisoner was transferred to different facility); *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (holding inmate's request for injunctive relief mooted upon his transfer from relevant prison). Thus, there is "no actual injury remain[ing] that the Court could redress with a favorable decision[.]" *Demis v. Sniezek*, 558 F.3d 508, 513 (6th Cir. 2009). Accordingly, the Court **DENIES** Plaintiff's motion for injunctive relief [Doc. 3].

## II. SCREENING OF COMPLAINT

### A. Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).

---

[2] The Court takes judicial notice that Plaintiff was booked into the Downtown Detention Center on February 24, 2026, and is facing two felony murder charges and two misdemeanor charges for violation of a restraining order. *See* Davidson Cnty. Sheriff's Office, *Active Inmate Search*, https://www.dcso.nashville.gov/Search/Person (last visited April 22, 2026). The Court may take judicial notice of information provided by a public authority. *See Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under Fed. R. Evid. 902, and courts may accordingly take judicial notice of the information found on these websites." (citations omitted)).

4

The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

### B. Plaintiff's Allegations

Plaintiff was detained in the Davidson County Jail without dental services for approximately eight years. [Doc. 1 at 4]. He was sentenced on or about January 8, 2024. [*Id.*]. On or about March 9, 2024, Plaintiff was transferred into TDOC custody and sent to Bledsoe County Correctional Complex ("BCCX"). [*Id.*]. During the intake process, he had a dental exam. [*Id.* at 4–5]. An x-ray revealed that Plaintiff had a broken tooth and bleeding gums, but he was not offered any treatment, even though he was in pain when eating and drinking. [*Id.* at 5]. Plaintiff requested a cap or crown "to save a broken tooth," but his request was denied. [*Id.*]. The BCCX dentist told Plaintiff that they did not perform caps or crowns at that facility, but that Plaintiff would receive

dental services when he reached his permanent facility. [*Id.*]. Plaintiff was transferred to Morgan County Correctional Complex ("MCCX") approximately six months later. [*Id.*].

In mid-2025, Plaintiff received a cursory dental examination at MCCX from Dr. John Richeson, a dentist employed by Centurion Healthcare of Tennessee, LLC ("Centurion"), TDOC's contract medical provider. [*Id.* at 3, 5]. Dr. Richeson "performed a cursory exam with a flashlight and a stick." [*Id.* at 5]. Dr. Richeson placed Plaintiff on a "cleaning list" but did not treat Plaintiff's gums or provide any restorative services, telling Plaintiff, "[W]e don't do crowns to save teeth." [*Id.*]. Dr. Richeson did, however, offer Plaintiff extraction. [*Id.*].

In November 2025, Plaintiff finally received his only teeth cleaning in ten years. [*Id.*]. On February 26, 2026, he had another dental examination, where Dr. Richeson again performed "a cursory exam with a flashlight and stick." [*Id.*]. Plaintiff again requested that Dr. Richeson save his tooth, but Dr. Richeson repeated that "they" do not save teeth by using caps or crowns. [*Id.*]. Richeson told Plaintiff: "If you just keep it clean . . . you'll be fine. Use sensitive toothpaste." [*Id.* at 5-6]. Dr. Richeson did not provide any additional treatment, even though Plaintiff had a "sick call" for dental pain. [*Id.* at 6]. Dr. Richeson also did not provide Plaintiff with any sensitive toothpaste, even though Plaintiff is indigent and could not afford to purchase it. [*Id.*]. Plaintiff claims Dr. Richeson only offered an extraction, even though he knew Plaintiff wanted to save the tooth. [*Id.*].

Based on these allegations, Plaintiff filed this action on February 17, 2026 [Doc. 1]. He seeks declaratory, injunctive, and monetary relief under 42 U.S.C. § 1983 and the Patient Protection and Affordable Care Act ("ACA") against TDOC Commissioner Frank Strada in both his individual and official capacities; Dr. John Richeson in his individual capacity; and Centurion. [*Id.*].

6

### C. Analysis

#### 1. Affordable Care Act Claim

Plaintiff alleges that Defendants' actions violate the ACA's "mandate to care for all qualified citizens[,]" because he was a ward of the State that was denied constitutionally adequate dental care. [Doc. 1 p. 2, 6–7]. But Plaintiff does not identify what provision of the ACA he believes Defendants violated. And the ACA exempts prisoners from its individual mandate to maintain essential coverage. *See* 26 C.F.R. § 1.5000A-3(d); 45 C.F.R. § 155.20. Many of the ACA's provisions do not "confer [a] private cause of action to enforce its terms." *Vermont Alliance for Ethical Healthcare, Inc. v. Hoser*, 274 F. Supp. 3d 227 (2017); *see also Mills v. Bluecross Blueshield of Tennessee, Inc.*, No. 3:15-CV-552, 2017 WL 78488, at *6 (E.D. Tenn. Jan. 9, 2017); *Air Evac EMS, Inc. v. USAble Mutual Ins. Co.*, No. 4:16-CV-266, 2018 WL 2422314, at *3 (E.D. Ark. May 29, 2018). Even where a private cause of action exists, it requires an allegation that one "was excluded from participation in, denied the benefit of, or subjected to discrimination under" a health insurance plan. *See McCoy v. Amazon CHA 1 Fulfillment Ctr.*, No. 1:20-CV-166, 2021 WL 6338462, *2 (E.D. Tenn. Jan. 21, 2021). Plaintiff's complaint contains no allegations that would permit the inference that he was excluded from participation in, denied the benefit of, or subject to discrimination under a health insurance plan. In the absence of such an allegation, he has not stated a plausible claim under the ACA, and that claim will be dismissed. Plaintiff's remedy—if one exists—is pursuant to a constitutional challenge under 42 U.S.C. § 1983. The Court turns its attention to that statute.

#### 2. Section 1983 Claim

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any

7

constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.").

Initially, Plaintiff does not appear to pursue any claims related to his dental care at the Davidson County Jail and/or BCCX. However, out of an abundance of caution, the Court finds that any such claims would be time-barred, because the latest possible constitutional violation at either of these facilities occurred more than one year prior to Plaintiff filing this lawsuit. [*See* Doc. 1 p. 4–5, 10]; *see Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Tenn. Code Ann*. § 28-3-104; *Foster v. State*, 150 S.W.3d 166, 168 (Tenn. Ct. App. 2004) (applying the one-year statute of limitations from Tenn. Code Ann. § 28-3-104 in a § 1983 claim). Plaintiff alleges he was transferred to BCCX on March 9, 2024. He did not file the Complaint until almost two years later, on February 17, 2026.

Next, the Court considers Plaintiff's claim that he was denied constitutionally adequate dental care at the MCCX, which implicates Plaintiff's Eighth Amendment rights. The Eighth Amendment, applicable to the States through the Fourteenth Amendment, provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII; *see also Robinson v. California*, 370 U.S. 660, 666–67 (1962). This provision requires the government "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). But the United States Constitution does not guarantee a prisoner "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Rather, the Eighth Amendment's prohibition against cruel and unusual punishment proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants

8

acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Negligence is insufficient to establish liability; deliberate indifference requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839–40). Therefore, to establish an official's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

With these standards in mind, the Court turns to the core of Plaintiff's allegations as to all Defendants: that he was denied a cap or crown and offered only a tooth extraction for his pain. As Plaintiff does not allege that extraction of his tooth was not a medically appropriate intervention for a broken tooth, only that it was an intervention he did not want. In the absence of any suggestion that extraction was inappropriate, Defendants' alleged refusal to provide Plaintiff with his preferred treatment does not amount to deliberate indifference.

Indeed, numerous courts have held that offering a tooth extraction instead of a root canal, cap, or other procedure, is not an Eighth Amendment violation. *See, e.g., James v. Penn. Dep't of Corr.*, 230 F. App'x 195, 197 (3d Cir. 2007) (finding no Eighth Amendment violation when abscessed tooth was extracted because another possible treatment, a root canal, was unavailable per prison policy); *Leachman v. Harris Cnty.*, 779 F. App'x 234, 238 (5th Cir. 2019) (finding "prisoner failed to state a claim under the Eighth Amendment based on the jail's provision of 'extraction of his injured teeth' rather than 'more expensive restorative treatment'" (citation omitted)); *Mathews v. Raemisch*, 513 F. App'x 605, 606–07 (7th Cir. 2013) (offering extraction, rather than a root canal, does not demonstrate deliberate indifference because the "dispute is over nothing but the choice of one routine medical procedure versus another"); *Willis v. Washington*, 172 F.3d 54, 1999 WL 14307, at *2 (7th Cir. 1999) (rejecting Eighth Amendment claim by inmate

9

who was told "he either could live with the pain or have his teeth pulled," and who alleged that he "should have been offered alternatives to extraction"); *Lamb v. Advanced Corr. Healthcare, Inc.*, No. 17-C-383, 2018 WL 3150227, at *6 (E.D. Wis. June 27, 2018) ("As to a 'pull only,' or 'extraction only' policy, the majority rule appears to be that offering extraction in lieu of a root canal or other more expensive treatment for tooth decay does not violate the Eighth Amendment if extraction is medically appropriate and will resolve the issue." (quotation omitted)); *Ciaprazi v. Jacobson*, 13 Civ. 4813, 2016 WL 4619267, at *4 (S.D.N.Y. 2016) ("But even if Ciaprazi's teeth could have been treated with root-canal therapy, it would not violate the Eighth Amendment for [Defendant] to offer him only extraction."); *Wilkens v. Ward*, No. Civ–05–254–M, 2007 WL 2407082, at *6–7 (W.D. Okla. Aug. 22, 2007) (no Eighth Amendment violation where prisoner was refused a root canal and was offered extraction only pursuant to prison policy); *Campbell v. St. Clair Cnty. Jail*, No. CIV. 2:08-CV-10224, 2008 WL 186376, at *2 (E.D. Mich. Jan. 22, 2008) (jail official's decision to extract tooth rather than save it via a root canal does not among to deliberate indifference, because it "involves merely a disagreement between plaintiff and jail officials over plaintiff's dental treatment and therefore fails to establish an Eighth Amendment claim for purposes of bringing a claim under § 1983"); *Del Muro v. Federal Bureau of Prisons*, Civ. No. 5:03-214, 2004 WL 1542216, at *3–4 (N.D. Tex. July 8, 2004) (no Eighth Amendment violation where the prisoner was offered extraction only pursuant to prison policy and not the crowns or a bridge he desired); *see also Greywind v. Podrebarac*, No. 1:10-CV-6, 2011 WL 4750962, *8 & n.6 (D.N.D. Sept. 12, 2011) (finding no "clearly established" right to crowns and implants in lieu of extraction and noting that "[g]iven the weight of existing authority, any prisoner claim for better dental care than what can be afforded by the poor and working poor in this county would face an uphill battle"). Because offering one appropriate treatment instead of an inmate's preferred treatment does not constitute deliberate indifference, Plaintiff cannot prevail on an

Eighth Amendment claim as to any Defendant based on the denial of his request for a cap or crown. As the Court will explain, Plaintiff's claims against each Defendant fail to state a claim for independent reasons.

*Defendant Frank Strada*. Plaintiff sues TDOC Commissioner Frank Strada in both his official and individual capacities. [Doc. 1 p. 2]. Plaintiff alleges that Defendant Strada failed his "constitutional and statutory duty to operate TDOC in a lawful manner" and to provide constitutionally adequate medical and dental care to TDOC inmates. [*Id.* at 2, 7].

Suit against Defendant Strada in his official capacity is the equivalent of suit against the TDOC. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). But Plaintiff may not maintain suit against the State of Tennessee or its agencies, because "a state is not a person within the meaning of §1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). Therefore, any official capacity claim against Defendant Strada will be dismissed.[3]

To state an individual-liability claim against Defendant Strada, Plaintiff "must plead that [the] Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676. This is because a theory of respondeat superior liability does not apply in a § 1983 case. *Id.* ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory

---

[3] In *Ex parte Young*, the Supreme Court recognized an exception to Eleventh Amendment sovereign immunity "for claims for injunctive relief against individual state officials in their official capacities." *Diaz v. Michigan Dept. of Corrections*, 703 F.3d 956, 964 (6th Cir. 2013). But "[i]n order to fall within the *Ex parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law." *Id.* Plaintiff is no longer in the custody of the TDOC, so his request for injunctive relief does not bring his claims within the *Ex parte Young* exception.

11

of respondeat superior."); *Monell*, 436 U.S. at 691 (finding that liability under § 1983 may not be imposed simply because a defendant "employs a tortfeasor"). Instead, to hold a supervisory official responsible in a § 1983 action, a plaintiff must sufficiently allege "that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (internal citation omitted).

The only conceivable allegation of misconduct that could implicate Defendant Strada is Plaintiff's allegation that Dr. Richeson told him "they" or "we" do not do crowns or caps to save teeth. [Doc. 1 at 5]. Assuming, *arguendo*, that these plural pronouns refer to the TDOC and thus imply a TDOC policy of not providing those specific treatments, the Court has already explained why limiting Plaintiff's treatment options to a tooth extraction does not constitute an Eighth Amendment violation. Plaintiff's complaint contains no other factual allegations from which it may be plausibly inferred that Defendant Strada encouraged or was involved in any specific instances of alleged misconduct. Claims against him will therefore be dismissed.

*Dr. Richeson*. Plaintiff sues Dr. Richeson in his individual capacity, maintaining that Dr. Richeson failed to provide Plaintiff with constitutionally adequate dental care. [Doc. 1 at 3]. Specifically, he complains that Dr. Richeson (1) performed "a cursory exam with a flashlight and [a] stick"; (2) advised Plaintiff that he would not "save" his tooth with a crown but would extract it; (3) failed to provide him with any treatment, including pain management; and (4) failed to provide him with sensitive toothpaste, even though Plaintiff could not afford to purchase it. [*Id.* at 4–6].

Viewing the allegations in the light most favorable to Plaintiff, the Court presumes that Plaintiff's broken tooth and bleeding gums were sufficiently serious medical needs to meet the objective prong of an Eighth Amendment claim. *See Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) ("Dental needs fall into the category 'of serious medical needs' because '[d]ental care is one

12

of the most important needs of inmates.'" (quoting *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008))). So the Court next considers whether Plaintiff can establish Dr. Richeson acted with deliberate indifference to those needs.

To recap, Plaintiff alleges that he presented to Dr. Richeson with a broken tooth and bleeding gums, received an initial examination, was offered an extraction and placed on a cleaning list, and received a dental cleaning months later. He alleges Dr. Richeson performed a second dental examination where he again told Plaintiff that he would not do an extraction, but that Plaintiff should keep his tooth clean and use sensitive toothpaste.

First, Plaintiff alleges Dr. Richeson performed a "cursory" exam, using only a flashlight and a stick. [Doc. 1 at 5]. But while Plaintiff complains the exam was deficient, he does not allege he was injured by its deficiency. Dr. Richeson already knew that Plaintiff had a broken tooth and bleeding gums, so the meager exam did not prevent him from discovering a serious medical need. These allegations are insufficient to establish deliberate indifference.

Next, Plaintiff complains that Dr. Richeson told him to brush his teeth with sensitive toothpaste, which Plaintiff could not afford to purchase. [Doc. 1 p. 6]. But Plaintiff does not allege that he requested the toothpaste or told Dr. Richeson that he could not afford to buy it himself. These allegations are also insufficient to establish deliberate indifference.

Third, Plaintiff claims that Dr. Richeson failed to provide him with a treatment for pain on February 6, 2026, which is the reason Plaintiff made a sick call request. [Doc. 1 p. 5–6]. Drawing reasonable inferences in Plaintiff's favor, this allegation suggests Dr. Richeson was aware that Plaintiff was in some level of pain. Elsewhere, Plaintiff says his pain was so severe that it hurt to eat and drink, though it is not clear whether he communicated that to Dr. Richeson. [*Id.* at 5]. But even if he did, Dr. Richeson did not fail to treat Plaintiff's pain. He in fact offered Plaintiff an extraction, which presumably would have eliminated Plaintiff's pain from his broken tooth.

Plaintiff refused Dr. Richeson's proposed treatment, yet he nowhere suggests the extraction would have been inadequate to relieve his pain. The only reason he provides for his refusal of the extraction is that he did not want to lose the tooth. Apparently in response to Plaintiff's refusal, Dr. Richeson recommended he keep the tooth clean and use sensitive toothpaste. These allegations are insufficient to establish deliberate indifference.

Finally, Plaintiff's claim that Dr. Richeson would not provide Plaintiff with a cap/crown despite Plaintiff's desire to save his tooth because "they don't save teeth by using caps/crowns" [Doc. 1 p. 5]. It is unclear whether "they" refers to Dr. Richeson personally, a policy of TDOC, or a policy of Centurion. Regardless, Plaintiff has not alleged any facts suggesting that extraction of his tooth was not a medically appropriate intervention for a broken tooth. As the Court has explained, in the absence of such an allegation, Richeson's refusal to provide Plaintiff with his preferred treatment does not amount to deliberate indifference. Plaintiff has not plausibly alleged that Dr. Richeson acted with deliberate indifference to his serious medical needs.

*Centurion.* Plaintiff purports to sue Centurion in its individual capacity [Doc. 1 p. 4]. Plaintiff cannot maintain an "individual" liability claim against a company. However, private corporations that perform "traditional state functions" act under color of law for purposes of § 1983. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011); *Green v. Rubenstein*, 644 F. Supp. 2d 723, 738 (S.D.W.Va. 2009) ("A corporation acting under color of State law can be held liable under Section 1983 only for unconstitutional policies and practices. They cannot be held liable under the doctrine of *respondeat superior* for the individual actions of their employees."); *see Hodges v. Strada*, No. 3:23-CV-00952, 2025 WL 2471150, at *4, n.5 (M.D. Tenn. Aug. 27, 2025) ("A claim against Centurion of Tennessee is neither an individual-capacity claim nor an official-capacity claim, but rather a so-called *Monell* claim."). Such an entity "cannot be held liable under a theory of respondeat superior." *Id.* Assuming Centurion was

14

performing a traditional state function in providing medical care to prisoners, to prevail on a § 1983 claim against Centurion, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation of [plaintiff's] rights." *Id.* In other words, Plaintiff must plausibly allege that he suffered a particular injury as a result of a policy or custom of the company itself. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation omitted).

Here, Plaintiff alleges only that he was advised, "[W]e don't do crowns to save teeth" [Doc. 1 p. 5]. Assuming Centurion had a policy of denying crowns/caps in favor of extractions, the extensive caselaw cited above demonstrates that such a policy would not have violated Plaintiff's Eighth Amendment rights. Accordingly, the claims against Centurion must be dismissed.

## III.   CONCLUSION

For the reasons set forth above:

1. Plaintiff's Motion to Certify Class and for Appointment of Counsel [Doc. 2] and Motion for Injunctive Relief [Doc. 3] are **DENIED**;

2. Plaintiff's Motion for Leave to Proceed *in forma pauperis* [Doc. 7] is **GRANTED**;

3. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

4. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

5. The Clerk is **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

6. Even with liberal construction, Plaintiff's complaint fails to state a claim upon which relief may be granted under § 1983, and this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A; and

7. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

15

**SO ORDERED.**

_Charles E. Atchley, Jr._
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**

16